Blaise S. Curet (SBN 124983)
SINNOTT, PUEBLA, CAMPAGNE &
CURET, APLC
2000 Powell Street, Suite 830
Emeryville, CA 94608
(415) 352-6200 (telephone)
bcuret@spcclaw.com

Robin D. Craig (SBN 130935)
LAW OFFICE OF ROBIN CRAIG
6114 La Salle No. 517
Oakland, CA 94611
(510) 549-3310 (telephone)
rdc@rcraiglaw.com

Harris B. Winsberg (*pro hac vice*)
Matthew M. Weiss (*pro hac vice*)
Matthew G. Roberts (*pro hac vice*)
PARKER HUDSON RAINER & DOBBS LLP
303 Peachtree Street NE, Suite 3600
Atlanta, GA 30308
(404) 523-5300 (telephone)
hwinsberg@phrd.com
mweiss@phrd.com
mroberts@phrd.com

Todd Jacobs (*pro hac vice*)
John E. Bucheit (*pro hac vice*)
PARKER HUDSON RAINER & DOBBS LLP
Two N. Riverside Plaza
Suite 1850
Chicago, IL 60606
(312) 477-3306 (telephone)
tjacobs@phrd.com
jbucheit@phrd.com

*Attorneys for Westport Insurance Corporation,* f/k/a *Employers Reinsurance Corporation*

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| *In re*: | Bankruptcy Case No. 23-30564 |
| THE ROMAN CATHOLIC ARCHBISHOP OF SAN FRANCISCO, | Chapter 11 |
| Debtor and Debtor-in-Possession. | |
| WESTPORT INSURANCE CORPORATION, F/K/A EMPLOYERS REINSURANCE CORPORATION, | Adv. Pro. No. 25-03070 |
| Plaintiff, | **NOTICE OF MOTION AND MOTION TO WITHDRAW THE REFERENCE BY WESTPORT INSURANCE CORPORATION** |
| v. | |
| THE ROMAN CATHOLIC ARCHBISHOP OF SAN FRANCISCO, a corporation sole; and DOES 1 through 50, | **ORAL ARGUMENT REQUESTED** |
| Defendants | Judge: TBD<br>Date: TBD<br>Time: TBD<br>Place: TBD |

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that plaintiff Westport Insurance Corporation, formerly known as Employers Reinsurance Corporation ("Westport"), respectfully moves the United States District Court for the Northern District of California pursuant to 28 U.S.C. § 157(d), FED. R. BANKR. P. 5011, and B.L.R. 5011-2 for entry of an order withdrawing the reference to the United States Bankruptcy Court for the Northern District of California (the "Bankruptcy Court") of the above-captioned adversary proceeding (the "Coverage Action") "for cause." "Cause" exists for withdrawal of the reference under 28 U.S.C. § 157(d) because, among other things, Westport has demanded a jury trial and has not consented to final adjudication by the Bankruptcy Court, and all claims in the Coverage Action are non-core.

PLEASE TAKE FURTHER NOTICE that the Motion is based on this Notice of Motion, the attached *Memorandum of Law in Support of Westport's Motion to Withdraw the Reference*, the *Declaration of Matthew G. Roberts in Support of Westport's Motion to Withdraw the Reference* filed concurrently herewith, and all other papers, pleadings, and records on file in this Coverage Action.

PLEASE TAKE FURTHER NOTICE that, pursuant to Bankruptcy Local Rule 5011-2(d), unless the assigned District Judge orders otherwise, within fourteen days after receiving notice of the assignment to a District Judge under Bankruptcy Local Rule 5011-2(c), any party objecting to withdrawal of the reference shall file in the District Court its opposition brief of not more than ten pages; fourteen days thereafter, any party supporting withdrawal of the reference may file a reply brief of not more than ten pages; and no hearing will be held unless the assigned District Judge orders otherwise.

*[Signatures follow]*

Dated: October 8, 2025

By: */s/ Harris B. Winsberg*

**PARKER HUDSON RAINER & DOBBS LLP**
Harris B. Winsberg (admitted *pro hac vice*)
Matthew M. Weiss (admitted *pro hac vice*)
Matthew G. Roberts (admitted *pro hac vice*)
303 Peachtree Street NE, Suite 3600
Atlanta, GA 30308
(404) 523-5300 (telephone)
hwinsberg@phrd.com
mweiss@phrd.com
mroberts@phrd.com

Todd Jacobs (admitted *pro hac vice*)
John E. Bucheit (admitted *pro hac vice*)
Two N. Riverside Plaza
Suite 1850
Chicago, IL 60606
(312) 477-3306 (telephone)
tjacobs@phrd.com
jbucheit@phrd.com

**SINNOTT, PUEBLA, CAMPAGNE & CURET, APLC**
Blaise S. Curet
2000 Powell Street, Suite 830
Emeryville, CA 94608
(415) 352-6200 (telephone)
bcuret@spcclaw.com

**LAW OFFICE OF ROBIN CRAIG**
Robin D. Craig
6114 La Salle No. 517
Oakland, CA 94611
(510) 549-3310 (telephone)
rdc@rcraiglaw.com

*Attorneys for Westport Insurance Corporation, formerly known as Employers Reinsurance Corporation*

<table>
<tr><td>1</td><td>Blaise S. Curet (SBN 124983)</td><td>Harris B. Winsberg (<em>pro hac vice</em>)</td></tr>
</table>

| | |
|---|---|
| 1 | Blaise S. Curet (SBN 124983) |
| 2 | SINNOTT, PUEBLA, CAMPAGNE & CURET, APLC |
| 3 | 2000 Powell Street, Suite 830 Emeryville, CA 94608 |
| 4 | (415) 352-6200 (telephone) bcuret@spcclaw.com |

1  Blaise S. Curet (SBN 124983)                 Harris B. Winsberg (*pro hac vice*)
   SINNOTT, PUEBLA, CAMPAGNE &                  Matthew M. Weiss (*pro hac vice*)
2  CURET, APLC                                  Matthew G. Roberts (*pro hac vice*)
   2000 Powell Street, Suite 830                PARKER HUDSON RAINER & DOBBS LLP
3  Emeryville, CA 94608                         303 Peachtree Street NE, Suite 3600
   (415) 352-6200 (telephone)                   Atlanta, GA 30308
4  bcuret@spcclaw.com                           (404) 523-5300 (telephone)
                                                hwinsberg@phrd.com
5  Robin D. Craig (SBN 130935)                  mweiss@phrd.com
   LAW OFFICE OF ROBIN CRAIG                     mroberts@phrd.com
6  6114 La Salle No. 517
   Oakland, CA 94611                            Todd Jacobs (*pro hac vice*)
7  (510) 549-3310 (telephone)                   John E. Bucheit (*pro hac vice*)
   rdc@rcraiglaw.com                            PARKER HUDSON RAINER & DOBBS LLP
8                                               Two N. Riverside Plaza
                                                Suite 1850
9                                               Chicago, IL 60606
                                                (312) 477-3306 (telephone)
10                                              tjacobs@phrd.com
                                                jbucheit@phrd.com
11
   *Attorneys for Westport Insurance Corporation,* f/k/a *Employers Reinsurance Corporation*
12
                          **UNITED STATES BANKRUPTCY COURT**
13                         **NORTHERN DISTRICT OF CALIFORNIA**
                               **SAN FRANCISCO DIVISION**
14

| | |
|---|---|
| *In re*: | Bankruptcy Case No. 23-30564 |
| THE ROMAN CATHOLIC ARCHBISHOP OF SAN FRANCISCO, | Chapter 11 |
| Debtor and Debtor-in-Possession. | |
| WESTPORT INSURANCE CORPORATION, F/K/A EMPLOYERS REINSURANCE CORPORATION, | Adv. Pro. No. 25-03070 |
| Plaintiff, | **MEMORANDUM OF LAW IN SUPPORT OF WESTPORT'S MOTION TO WITHDRAW THE REFERENCE** |
| v. | Judge: TBD |
| THE ROMAN CATHOLIC ARCHBISHOP OF SAN FRANCISCO, a corporation sole; and DOES 1 through 50, | Date: TBD<br>Time: TBD<br>Place: TBD |
| Defendants. | |

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT.................................................................................................. 1

BACKGROUND ....................................................................................................................... 3

    A.  The Parties & Policy .................................................................................................. 3

    B.  The 2019 California Child Victims Act and the Claims Against the Debtor................ 3

    C.  The Bankruptcy Case and Coverage Action ............................................................. 4

ARGUMENT ............................................................................................................................ 6

I.       THE MOTION IS TIMELY ............................................................................. 7

II.      THERE IS "CAUSE" TO WITHDRAW THE REFERENCE ........................................... 7

    A.  The Bankruptcy Court Lacks Authority to Finally Adjudicate the Coverage Action.... 8

    B.  Westport Has Demanded a Jury Trial ...................................................................... 12

    C.  All Other Factors Support Withdrawal of the Reference............................................ 16

III.    LOCAL RULE 9015-2(B) DOES NOT SUPPORT WAITING TO WITHDRAW THE

       REFERENCE................................................................................................................... 17

CONCLUSION……………………………………..…………………………………………18

# TABLE OF AUTHORITIES

PAGE(S)

**Cases**

*Burdette v. Emerald Partners LLC*,
No. C15-0816-JCC, 2015 WL 4394859 (W.D. Wash. July 16, 2015) ..................................... 20

*Certain Underwriters at Lloyds, Syndicates 2623/623 v. GACN, Inc. (In re GACN, Inc.)*,
555 B.R. 684 (B.A.P. 9th Cir. 2016) .................................................................... 15, 16

*Chu v. Canadian Indem. Co.*,
224 Cal. App. 3d 86 (1990) ............................................................................. 22

*Cumis Specialty Ins. Co. v. Kaufman*,
No. 21cv11107 (DLC), 2022 WL 4534459 (S.D.N.Y. Sept. 28, 2022) .................................. 20

*Everett v. Art Brand Studios, LLC*,
556 B.R. 437 (N.D. Cal. 2016) ................................................................. 11, 17, 18, 24

*Exec. Benefits Ins. Agency v. Arkison (In re Bellingham Ins. Agency)*,
702 F.3d 553 (9th Cir. 2012) ........................................................................ 17, 18

*Gens v. Colonial Sav., F.A.*,
No. 11-CV-05526 RMW, 2012 WL 993713 (N.D. Cal. Mar. 23, 2012) .................................. 24

*Germain v. Conn. Nat'l Bank*,
988 F.2d 1323 (2d Cir. 1993) ........................................................................... 20

*Granfinanciera v. Nordberg*,
492 U.S. 33 (1989) ...................................................................................... 20

*Green v. FDIC (In re Tamalpais Bancorp)*,
451 B.R. 6 (N.D. Cal. 2011) ......................................................................... 18, 23

*Gumport v. Growth Fin. Corp. (In re Transcon Lines)*,
121 B.R. 837 (C.D. Cal. 1990) .......................................................................... 22

*Hjelmeset,*
v. Cheng Hung, No. 17-CV-05697-BLF, 2018 WL 558917 (N.D. Cal. Jan. 25, 2018) ........... 23

*In re Appleseed's Intermediate Holdings, LLC*,
2011 WL 6293251 (D. Del. Dec. 15, 2011) ............................................................ 21

*In re Cachet Fin. Servs.*,
652 B.R. 341 (C.D. Cal. 2023) ................................................................... passim

Case 2:25-cv-00070   Doc #13-1 Filed 01/06/25 Entered 01/06/25 08:13:50 Page 6 of 27
24

*In re Chateaugay Corp.*,
   104 B.R. 622 (S.D.N.Y. 1989) ........................................................................... 8, 9

*In re Cinematronics, Inc.*,
   916 F.2d 1444 (9th Cir. 1990) ....................................................................... passim

*In re EPD Inv. Co.*, LLC,
   594 B.R. 423 (C.D. Cal. 2018) ............................................................... 10, 19, 21

*In re FMI Forwarding Co., Inc.*,
   No. 00 B. 41815 (CB), 2005 WL 147298 (S.D.N.Y. Jan. 24, 2005) ........................ 7

*In re Gurga*,
   176 B.R. 196 (B.A.P. 9th Cir. 1994) ................................................................... 16

*In re G–I Holdings, Inc.*,
   278 B.R. 376 (Bankr. D.N.J. 2002) ..................................................................... 17

*In re Healthcentral.com*,
   504 F.3d 775 (9th Cir. 2007) .............................................................................. 23

In re Salazar,
   11-CV-2792 L(BLM), 2012 WL 280759 (S.D. Cal. Jan. 31, 2012) .................... 9, 10

*Masonite Corp. v. Great Am. Surplus Lines Ins. Co.*,
   224 Cal. App. 3d 912 (1990) .............................................................................. 22

*N. Pipeline Const. Co. v. Marathon Pipe Line Co.*,
   458 U.S. 50 (1982) ....................................................................................... 17, 18

*Northgate Homes, Inc. v. City of Dayton*,
   126 F.3d 1095 (8th Cir. 1997) ............................................................................ 20

*Parsons v. Bedford*,
   28 U.S. 433 (1830) ............................................................................................. 20

*Roman Cath. Diocese of Rockville Ctr. v. Certain Underwriters at Lloyds, London & Certain London Mkt. Companies*,
   634 B.R. 226 (S.D.N.Y. 2021) ................................................................ 8, 17, 18, 21

*Roman Cath. Diocese of Rockville Ctr., New York v. Arrowood Indem. Co.*,
   No. 20-CV-11011 (VEC), 2021 WL 1978560 (S.D.N.Y. May 17, 2021) ................ 20

*Rosales v. Rosales (In re Rosales)*,
   No. 13-CV-01316-LHK, 2013 U.S. Dist. LEXIS 160625 (N.D. Cal. Nov. 4, 2013) ............... 23

*Sec. Farms v. Int'l Bhd. of Teamsters, Chauffers, Warehousemen & Helpers*,
   124 F.3d 999 (9th Cir. 1997) ....................................................................... passim

Case 2:25-00700 Doc#13-1 Filed 01/06/25 Entered 01/06/25 13:35:30 Page 7 of 27
24

*Sharp v. Hawkins*,
   No. C 03-5023 CW, 2004 WL 2792121 (N.D. Cal. June 8, 2004) ........................................... 24

*Simler v. Conner*,
   372 U.S. 221 (1963) ........................................................................................................... 20

*Stern v. Marshall*,
   564 U.S. 462 (2011) ..................................................................................................... 12, 17

*Stonewall Ins. Co. v. Nat'l Gypsum Co.*,
   No. 86 CIV. 9671 (JSM), 1992 WL 281401 (S.D.N.Y. Sept. 25, 1992) ................................. 21

*United States v. Boulware*,
   350 F. Supp. 2d 837 (D. Haw. 2004) ...................................................................................... 13

*United States v. Yochum (In re Yochum)*,
   89 F.3d 661 (9th Cir. 1996) .................................................................................................... 14

*Vacation Vill., Inc. v. Clark Cty.*,
   497 F.3d 902 (9th Cir. 2007) ................................................................................................... 10

*Wellness Int'l Network, Ltd. v. Sharif*,
   575 U.S. 665 (2015) ................................................................................................................ 17

**Statutes**

28 U.S.C. § 157 ........................................................................................................... passim

**Constitutional Provisions**

U.S. Const. amend. VII .................................................................................................. 19, 20

U.S. Const., art. III, § I ........................................................................................ 11, 13, 17, 18

**Rules**

FED. R. BANKR. P. 5011 ........................................................................................................... 1

- iv -

Movant Westport Insurance Corporation, formerly known as Employers Reinsurance Corporation ("Westport"), plaintiff in the above-captioned adversary proceeding (the "Coverage Action"), hereby submits this memorandum of law in support of its motion, pursuant to 28 U.S.C. § 157(d), FED. R. BANKR. P. 5011, and B.L.R. 5011-2, to withdraw the reference to the Bankruptcy Court of the Coverage Action (the "Motion"). In support hereof, Westport respectfully states as follows:

## PRELIMINARY STATEMENT[1]

This Coverage Action is a paradigmatic non-bankruptcy dispute. At the heart of the suit is a disagreement over the effect of a prepetition release benefiting Westport and the scope of coverage afforded to the above-captioned "Debtor" by a contract for insurance that Westport underwrote and issued decades ago. The Debtor believes that the Policy covers the Debtor's (actual or alleged) liability for the hundreds of sexual abuse tort claims brought against it in the wake of California's enactment of the Child Victims Act ("CVA"); Westport does not, not least because of the Release. But which party has the right of it is not for the Bankruptcy Court to decide. For at least the following three reasons, this Court should withdraw the reference and recall the Coverage Action.

***First***, much of the Coverage Action will hinge on jury issues that go far beyond a mere dispute over language. Under the terms of its policy, Westport is not liable for the acts of the Debtor that were not accidental or for injury that the Debtor either expected or intended. The CVA plaintiffs in the underlying tort actions contend that the Debtor was aware of the abuse, ratified it, and covered it up. At the very least, then, the Coverage Action claims arising from such issues will require a determination of whether the Debtor was aware its clerics were sexually abusing children, what the Debtor knew about the abuse, when the Debtor knew it, how the Debtor responded, and thus whether the underlying injuries were either expected or intended. These fundamentally factual

---

[1] Capitalized terms used but not defined in this Preliminary Statement have the definitions ascribed to them below.

Case 25-03070  Doc 13-1  Filed 01/06/25  Entered 01/06/25 13:36:30  Page 6 of 27
24

disputes require a jury,[2] and that requires withdrawal of the reference.

**Second**, all claims at issue in the Coverage Action lie outside of the Bankruptcy Court's authority to adjudicate finally. As an Article I tribunal, the Bankruptcy Court may enter final judgment only on claims that arise under the Bankruptcy Code or in the Bankruptcy Case (with certain exceptions not applicable here), and Westport's claims in the Coverage Action satisfy neither requirement; they involve exclusively state-law matters – including the applicability of coverage defenses under California law and the effect of the prepetition Release – that by definition do not arise under the Bankruptcy Code or in the Bankruptcy Case. These issues fall well outside core bankruptcy jurisdiction, and the claims underlying them are private rights that must be resolved by an Article III court.

**Finally**, withdrawing the reference now will promote the efficiency, economy, and other policy considerations that animate the referral power. Given the exclusively noncore claims and predominance of jury issues in this Coverage Action, the reference **must** be withdrawn eventually – and efficiency is best served by having the matter heard in the correct forum at the earliest possible opportunity. As important, withdrawing the reference now will prevent ongoing harm to the administration of the Bankruptcy Case: It will free the Bankruptcy Court from the demands of the Coverage Action that otherwise would divert time away from the Bankruptcy Court's central charge of overseeing the reorganization process and formulation of a plan. Rather than investing judicial resources on a complex coverage matter that is likely to outlast the Bankruptcy Case, the Bankruptcy Court can and should focus on bringing about compromises of disputed plan terms through engagement with the parties, without the distraction of the Coverage Action.

For these reasons, and for those set forth in greater detail below, the Motion should be granted and the reference withdrawn.

---

[2] For the avoidance of doubt, Westport neither waives the right to seek summary adjudication for any claims brought in the Coverage Action nor contends that such a disposition is unavailable. *E.g.*, Complaint (as defined below) at First and Second Causes of Action.

**A.     The Parties & Policy**

The defendant Debtor is a Roman Catholic archdiocese with its principal place of business in San Franciso, California.[3]  Plaintiff Westport is an insurance company that (by its successor) contracted prepetition with the Debtor to provide excess liability coverage (Excess Policy No. U10447) for the period July 8, 1972 to July 8, 1975 (the "Policy").[4]

Subject to its terms, conditions, and exclusions, the Policy provides indemnification to the Debtor for loss in excess of the limits of underlying insurance and resulting from an "occurrence" covered under the Policy.[5]  An "occurrence" is defined by the Policy as "an accident, including injurious exposure to conditions, which results, during the policy period, in personal injury or property damage neither expected nor intended from the standpoint of the Insured."[6]

**B.     The 2019 California Child Victims Act and the Claims Against the Debtor**

Beginning in "the late 1980s," the public became increasingly aware of "the societal problem of sexual abuse of minors,"[7] particularly within the Catholic church.  This eventually led to (among other things) California's enactment of legislation that revived for a set interval previously time-barred actions arising out of certain sexual abuse claims – *viz.*, the CVA.[8]  The window created by the CVA opened on January 1, 2020, and closed on December 31, 2022.[9]

By summer's end the following year, "approximately 537 separate, active lawsuits" had been filed and were pending against the Debtor (each, an "Underlying Claim").[10]  All were brought

---

[3] *Westport Insurance Corporation's Complaint for Declaratory Judgment and Demand for Jury Trial*, Adv. Dkt. No. 1.  ("Complaint"), at ¶ 16.

[4] *Id.* at ¶ 19.

[5] *See generally id.* at § A.  Among other things, the Policy imposes on the Debtor a duty to "cooperate with [Westport]" in connection with any claim or suit.  *Id.* at ¶ 25.

[6] Complaint at ¶ 23.

[7] *Declaration of Joseph J. Passarello in Support of Chapter 11 Petition and Debtor's Emergency Motions* [Dkt. No. 14] (the "Passarello Decl.") at ¶ 42.

[8] Code of Civ. Proc. § 340.1(q).

[9] *See id.*

[10] Passarello Decl. at ¶ 53.

"by plaintiffs alleging sexual abuse by clergy or others associated with the Debtor."[11]

The lead plaintiff firms bringing the abuse claims contend that the Debtor was aware of the abuse, ratified it, and covered it up.[12] While the causes of action are sometimes framed as negligent supervision claims, the CVA plaintiffs generally allege that the Debtor ratified the sexual abuse, refused to dismiss clergy that were known to be abusing children, and shielded clergy from responsibility for their sexual abuse.[13] The CVA plaintiffs further allege that the Debtor refused to report the sexual abuse to civil or criminal authorities.[14]

Reports issued by plaintiffs' counsel identify by name well over 100 clergy associated with the Debtor who allegedly sexually abused individuals, mostly children.[15] To put this in context, there are only approximately 345 priests currently active in the Archdiocese of San Francisco.[16]

## C.   The Bankruptcy Case and Coverage Action

The volume of CVA suits quickly convinced the Debtor that it lacked "the financial means" and the "practical ability" to resolve the underlying claims on an *ad hoc* basis.[17] As a result, the Debtor on August 21, 2023 commenced the above-captioned "Bankruptcy Case" by filing a

---

[11] *Id.*

[12] Jeff Anderson & Associates, Clergy Sexual Abuse in the: Archdiocese of San Francisco, Diocese of Oakland, Diocese of San Jose (the "Anderson Report"), p. 13 ("The data collected suggests the patterns and practices of Church officials, including the orchestration of an institutional cover-up of an enormous magnitude. Perhaps most shocking among the discoveries is that some perpetrators were intentionally transferred and retained in trusted positions with direct access to children even when they were known to be abusers."). The Anderson Report is attached as **Exhibit B** to the *Declaration of Matthew G. Roberts in Support of Westport's Motion to Withdraw the Reference*, filed concurrently herewith.

[13] Anderson Report at p. 13.

[14] *Id.* ("[T]he Bay Area Dioceses, like many other dioceses and archdioceses, knew priests were perpetrators that posed a significant danger to children. The sexual abuse of children has long been a crime in California. However, Church officials chose and continue to keep the crimes hidden and allow its priests continued and unfettered access to children.").

[15] *Id.* at pp. 6-7.

[16] *Id.* at p. 14.

[17] Passarello Decl. at ¶ 54. *Compare id.* at ¶ 20 ("Until recently, the [Debtor] has maintained financial viability while funding compensation for abuse survivors and continued litigation regarding claims of abuse.").

voluntary petition for relief under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq*.[18] The Debtor's stated purpose in seeking bankruptcy relief was to marshal its distributable assets for the "fair and equitable payment" of claims, "including [those of] the survivors of abuse," while ensuring continuity of "the work of the Church … using the resources dedicated to those purposes."[19]

As of the date hereof, the Debtor has tendered to Westport over 100 Underlying Claims for which the Debtor seeks coverage under the Policy.[20] The Debtor has not indicated (and Westport does not otherwise possess information suggesting) that the limits of liability underlying the Policy have been exhausted in accordance with the terms of the underlying policies.[21]

On October 8, 2025, Westport initiated this Coverage Action against the Debtor.[22] As set forth in the Complaint, Westport (a) demands a jury trial on all issues so triable and (b) seeks declaratory judgment that Westport has no obligation under the Policy to defend or indemnify the Debtor (or any affiliate, as applicable) for:[23]

- any claims arising out of alleged injury or damage inflicted by Fr. Joseph Pritchard, as the result of a unanimous jury verdict and finding that the Debtor "by December 31, 1973, kn[e]w or ha[d] reason to know, or was … otherwise on notice, that Father Joseph Pritchard had committed unlawful sexual conduct";[24]

- any claims released and barred under the *Confidential Settlement Agreement and Mutual Release*, dated on or around July 2005, between the Debtor and (among others) Westport (the "Release");[25]

---

[18] Dkt. No. 1.

[19] Passarello Decl. at ¶¶ 61-62.

[20] Complaint at ¶ 7.

[21] *Id*. at ¶ 8.e.

[22] *See* Complaint. Westport has also named presently unknown doe defendants.

[23] This description of the Complaint, including the judicial declarations and/or other relief sought therein, is a summary only and is qualified in its entirety by the Complaint.

[24] Complaint at First Cause of Action.

[25] *Id*. at Second Cause of Action.

- any Underlying Claim that does not involve an "accident" or injury that was neither "expected nor intended" by the Debtor (or other insured), and therefore is not an "occurrence" covered by the Policy;[26] and/or

- any Underlying Claims that are barred by the terms or conditions of the Policy (*e.g.*, because the Debtor breached its duty to Westport, the Underlying Claim alleges injury that occurred outside the policy period, the Debtor failed to give timely notice, etc.).[27]

Substantially contemporaneous with the Complaint, Westport filed this Motion.

## **ARGUMENT**

The reference to the Bankruptcy Court of the Coverage Action should be withdrawn "for cause" under Section 157.[28] *See* 28 U.S.C. § 157(d). That section permits district courts, which are vested with original jurisdiction over bankruptcy cases and proceedings, to "refer" all bankruptcy matters "to the bankruptcy judges for the district." *Id*. § 157(a); *see also id.* § 1334(a), (b) (vesting in the district courts original jurisdiction over bankruptcy cases and proceedings). This typically occurs automatically, as it did here, under a standing order of reference. *See* B.L.R. 5011-1 ("[a]ll cases under Title 11 [of the United States Code] and all civil proceedings arising under Title 11 or arising in or related to a case under Title 11 are referred to the Bankruptcy Judges of this District," with certain exceptions not applicable here).

But the reference is not absolute. A district court at any time, either *sua sponte* or on motion from a party, may[29] withdraw the reference to (and the matter from) the bankruptcy court. *See* 28 U.S.C. § 157(d); B.L.R. 5011-2. Withdrawal is appropriate when a party moves "timely" and shows "cause" in support of its request. 28 U.S.C. § 157(d). This Motion meets both requirements.

---

[26] *Id*. at Third Cause of Action.

[27] *Id*. at Fourth – Sixth Causes of Action.

[28] Unless otherwise stated herein, "Section __" refers to the cited section of Title 28 of the United States Code.

[29] Where resolution of the proceeding requires consideration of both bankruptcy and other, non-bankruptcy federal laws that regulate organizations or activities affecting interstate commerce, withdrawal of the reference is mandatory. 28 U.S.C. § 157(d). Mandatory withdrawal is not at issue here.

# I.    THE MOTION IS TIMELY

To start, the Motion is "timely" under Section 157(d).  *Id.*  Although that statute does not define the term or otherwise impose a "specific time limit for [withdrawal] applications," *In re FMI Forwarding Co., Inc.*, No. 00 B. 41815 (CB), 2005 WL 147298, at *6 (S.D.N.Y. Jan. 24, 2005), courts almost universally agree that a withdrawal request is timely if it is brought "as promptly as possible in light of the developments in the bankruptcy proceeding."  *Sec. Farms v. Int'l Bhd. of Teamsters, Chauffers, Warehousemen & Helpers*, 124 F.3d 999, 1007 (9th Cir. 1997); *accord, e.g.*, *In re Chateaugay Corp.*, 104 B.R. 622, 624 (S.D.N.Y. 1989) (application made "at the first reasonable opportunity as evaluated within the specific factual context presented" is timely).

Withdrawal motions that have satisfied this standard include those filed, *e.g.*, six days after removal of the applicable proceeding from state court, *see Sec. Farms*, 124 F.3d at 1007 n.3, and approximately 10 days after submission of an answer to the underlying complaint.  *See, e.g.*, *Roman Cath. Diocese of Rockville Ctr. v. Certain Underwriters at Lloyds, London & Certain London Mkt. Companies*, 634 B.R. 226, 233 (S.D.N.Y. 2021) (motion granted – filed eight days after answer); *see also In re Salazar*, No. 11CV2792 L BLM, 2012 WL 280759, at *2 (S.D. Cal. Jan. 31, 2012) (motion granted – filed four days after answer).  This makes good sense.  Since the applicant in every instance sought relief shortly after the proceeding became eligible for withdrawal, *e.g.*, *Sec. Farms*, 124 F.3d at 1007 n.3, each of them necessarily acted "at the first reasonable opportunity," *Chateaugay Corp.*, 104 B.R. at 624 – *i.e.*, "timely" – "within the … context" of their case.  *Id.*

So, too, here.  Much like the applicants in *Sec. Farms* and *Rockville Centre*, Westport acted with dispatch under the circumstances; it moved for withdrawal of the reference of the Coverage Action mere minutes after filing the Complaint that initiated the proceeding.  This qualifies as "timely" under any interpretation of the word.  *Cf., e.g.*, *Salazar*, 2012 WL 280759, at *2.  As such, Westport has satisfied the threshold requirement for removal.

# II.    THERE IS "CAUSE" TO WITHDRAW THE REFERENCE

In addition to being "timely," there is sufficient "cause" for the relief requested in the Motion.  Because the latter term (like the former) is not defined in Section 157(d), the Ninth Circuit has instructed courts to consider the following indicative factors: "the efficient use of judicial

resources, delay and costs to the parties, uniformity of bankruptcy administration, the prevention of forum shopping, and other related factors," *Sec. Farms*, 124 F.3d at 1008,[30] including the existence of a jury trial right. *E.g.*, *In re EPD Inv. Co.*, LLC, 594 B.R. 423, 425 (C.D. Cal. 2018). Where these factors signify sufficient "cause" for withdrawal of the reference, the failure to do so constitutes an abuse of discretion. *See In re Cinematronics, Inc*., 916 F.2d 1444, 1451 (9th Cir. 1990). Every factor compels withdrawal here.

### A. The Bankruptcy Court Lacks Authority to Finally Adjudicate the Coverage Action

At the outset, withdrawing the reference from the Bankruptcy Court will facilitate a more efficient and less expensive resolution of the Coverage Action. That is because the Bankruptcy Court cannot enter final judgment on the underlying claims consistent with Section 157 and Article III of the Constitution. *Cf., e.g., Everett v. Art Brand Studios, LLC*, 556 B.R. 437, 442 (N.D. Cal. 2016) ("In assessing efficiency, the Court considers whether the issues on which the Bankruptcy Court has jurisdiction to enter final judgment predominate with respect to the underlying complaint" (citing *Sec. Farms*, 124 F.3d at 1008)); *In re Cachet Fin. Servs.*, 652 B.R. 341, 345 (C.D. Cal. 2023) ("To determine whether cause for permissive withdrawal exists, a district court should first evaluate whether the claim is core or non-core, since it is upon this issue that questions of efficiency and uniformity will turn." (internal citations and quotations omitted)).

Section 157 in general terms is the statutory scheme by which bankruptcy courts hear the cases and proceedings referred to them by district courts. Relevant here, it separates all bankruptcy proceedings into one of two categories – "core" or "non-core" – and assigns bankruptcy judges a different level of adjudicative authority for each. *See* U.S.C. §§ 157(b)(1)-(2), (c)(1). If a proceeding qualifies as core, then "[b]ankruptcy judges may hear and determine" it on a final basis subject only to ordinary appellate review. *Id*., § 157(b)(1); *but see Stern v. Marshall*, 564 U.S. 462, 469 (2011) (statutory grant of adjudicative authority for certain core claim violated Article III of

---

[30] *See also Vacation Vill., Inc. v. Clark Cty.*, 497 F.3d 902, 914 (9th Cir. 2007) ("In determining whether cause exists, we consider the following: the efficient use of judicial resources, delay and costs to the parties, uniformity of bankruptcy administration, the prevention of forum shopping, and other related factors." (internal citations and quotations omitted)).

the Constitution).  For all other (*i.e.*, non-core) claims, the following procedure applies: (a) the bankruptcy judge must prepare "proposed findings of fact and conclusions of law" for submission "to the district court"; (b) all parties to the proceeding may lodge objections to the bankruptcy court's proposal; and (c) the "district judge" must enter "final … judgment" on the claim "after considering the bankruptcy judge's proposed findings and conclusions and … reviewing *de novo*" all "matters to which any party has [properly] objected."  28 U.S.C. § 157(c)(1); *but cf. id.*, § 157(c)(2) ("Notwithstanding the provisions of paragraph (1) of this subsection," a bankruptcy judge "with the consent of all … parties to the proceeding[] may … hear and determine" non-core claims).[31]  The upshot is that the core/non-core distinction typically governs the level of statutory authority a bankruptcy judge may exercise over a claim.

"Despite the importance of the core designation" to the statutory authority afforded a bankruptcy judge, however, "no exact definition of the term exists."  *Cinematronics*, 916 F.2d at 1449; *see id.* at 1449-50 (Section 157(b)(2) "contains a laundry list of core proceedings along with the admonition that core proceedings include, but are not limited to, the items listed" (internal citations and quotations omitted)).  Courts therefore determine "whether a matter is a non-core proceeding" by "look[ing] to a variety of factors 'such as whether the rights involved exist independent of title 11, depend on state law for their resolution, existed prior to the filing of a bankruptcy petition, or were significantly affected by the filing of the bankruptcy case.'"  *United States v. Yochum (In re Yochum)*, 89 F.3d 661, 670 (9th Cir. 1996) (quoting *Cinematronics*, 916 F.2d at 1450 n.5)).

The Coverage Action claims clearly are non-core under this analysis.  As a threshold matter, insurance coverage disputes – the basis of every claim in the Complaint – are not among the (non-exhaustive) core proceedings enumerated in Section 157(b)(2).  *See generally* 28 U.S.C. §

---

[31] Since this dual-track mechanism is inherently and obviously less efficient (and more expensive) than simply "proceeding in the district court" from the beginning, *Sec. Farms*, 124 F.3d at 1009; c*f. United States v. Boulware*, 350 F. Supp. 2d 837, 841 (D. Haw. 2004) (*de novo* "means the district court must consider the matter anew, as if it had not been heard before and as if no decision previously had been rendered"), courts within the Ninth Circuit employ the core/non-core analysis as a proxy for the economy and delay factors.  *See, e.g.*, *Cachet Fin. Servs.*, 652 B.R. at 345.

157(b)(2). More substantively, all of "the rights involved" in the Coverage Action arise from disagreements over the terms of prepetition contracts (the Policy and Release) that "depend on state law for their resolution" and by definition "exist independent of title 11," *Yochum*, 89 F.3d at 670 (internal citations and quotations omitted)). *See Certain Underwriters at Lloyds, Syndicates 2623/623 v. GACN, Inc. (In re GACN, Inc.)*, 555 B.R. 684, 698 (B.A.P. 9th Cir. 2016) ("[W]e are persuaded that [the debtor's] declaratory relief action against [its] insurer is not a core proceeding. The underlying dispute solely concerns the parties' rights and liabilities under a prepetition insurance contract, which was entered into pursuant to state law rather than as part of a bankruptcy case."). These are prototypical non-core claims. *See, e.g.*, Order re: Motions to Withdraw Reference, *The Roman Catholic Bishop of Oakland v. Pacific Indemnity,* et al. *(In re: The Roman Catholic Bishop of Oakland)*, Case No.3:24-cv-00709-JSC (March 18, 2024), ECF 29 at 4 ("The state law coverage claims [brought by a debtor against its insurers] are exclusively non-core."); *In re Gurga*, 176 B.R. 196, 199 (B.A.P. 9th Cir. 1994) ("Breach of contract actions are noncore claims"); *Cinematronics*, 916 F.2d at 1450 ("state law contract claims . . . should still not be deemed core"); *GACN*, 555 B.R. at 698; *Cachet Financial Servs.,* 2023 WL 4752048, at *4 (debtor's coverage claims against insurance company were "exclusively non-core . . . not related to any claims that may arise under bankruptcy law"); *Underwriters*, 634 B.R. at 237 (holding that a debtor-insured's claims against its insurers for declaratory judgment and damages were non-core); *In re G–I Holdings, Inc.*, 278 B.R. 376, 382 (Bankr. D.N.J. 2002) (observing that an insurance coverage action "bears no resemblance" to a core proceeding). As such, Section 157 prevents the Bankruptcy Court from entering final judgment on the Coverage Action claims.

So does Article III. Article III vests the "judicial Power of the United States … in one supreme Court" and "such inferior Courts as the Congress may from time to time ordain and establish." U.S. Const., art. III, § I. It also specifies that "the judges" exercising this power must "hold their offices during good behavior, without diminution of salary." *Stern*, 564 U.S. at 469. Bankruptcy judgeships satisfy neither criterion. *Id.* ("[Bankruptcy] judges … enjoy neither tenure during good behavior nor salary protection."); *Everett*, 556 B.R. at 442 ("[B]ankruptcy judges are not Article III judges."). For that reason, the Supreme Court has held that bankruptcy judges

generally cannot enter final judgment on a claim unless: (a) the claim "may be removed from the jurisdiction of Article III courts" because it "involv[es] [a] so-called 'public right[],'" which in the bankruptcy context means "'the restructuring of debtor-creditor relations … at the core of the federal bankruptcy power,'" *Exec. Bens. Ins. Agency v. Arkison*, 573 U.S. 25, 32 (2014) (quoting *N. Pipeline Const. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 69-72 (1982) (plurality opinion)); (b) "the parties knowingly and voluntarily consent to adjudication [of the claim] by a bankruptcy judge," *Wellness Int'l Network, Ltd. v. Sharif*, 575 U.S. 665, 669 (2015); or (c) "the action at issue … would necessarily be resolved in the claims allowance process." *Stern*, 564 at 499.[32]

None of these exceptions apply here. To start, the Bankruptcy Court cannot adjudicate the Coverage Action by consent – and necessarily will not resolve it "in the claims allowance process," *id.* – because Westport does not consent and has not filed a proof of claim in the Bankruptcy Case. Nor does the Coverage Action otherwise "involv[e] … public rights" that "may be removed from the jurisdiction of Article III courts." *Exec. Bens.*, 573 U.S. at 32 (internal quotations and citations omitted). Westport in the Coverage Action instead seeks to vindicate quintessential "private rights," *id.* (internal quotations and citations omitted): claims for non-bankruptcy relief (declaratory judgment) that exist independently of the Bankruptcy Case and arise from contracts that long predate it. *See, e.g.*, *Underwriters*, 634 B.R. at 234 ("Here, the claims at issue – declaratory judgment and breach of contract [arising from prepetition insurance policies issued to the debtor] – are private rights …"). Under these circumstances, the Coverage Action does not fit within any exception to the "inexorable command" of Article III, *N. Pipeline*, 458 U.S. at 59 (plurality opinion), and the Bankruptcy Court cannot adjudicate it.

As a result, the Bankruptcy Court lacks the requisite statutory and constitutional authority to determine on a final basis Westport's claims in the Coverage Action. This among other things

---

[32] Section 157 is to a large degree structured around these exceptions. *Exec. Benefits Ins. Agency v. Arkison (In re Bellingham Ins. Agency)*, 702 F.3d 553, 559 (9th Cir. 2012) ("[T]he division of claims in bankruptcy cases into core and non-core proceedings … was clearly inspired by the *Northern Pipeline* plurality's dictum" regarding "proceedings 'at the core of the federal bankruptcy power'" (quoting 458 U.S. at 71)); *see also, e.g.*, 28 U.S.C. § 157(c)(2) (permitting entry of final judgment on non-core claims by bankruptcy judges that obtain "the consent of all the parties to the proceeding").

- 11 -

means that the reference of the Coverage Action must be withdrawn eventually – it is a question of when, not if – and logic dictates that sooner is better than later. *Everett, LLC*, 556 B.R. at 445 ("[E]fficiency is best served by having the matter heard in the correct forum at the earliest possible opportunity"); *see also* Order re: Motions to Withdraw Reference, *Roman Catholic Bishop of Oakland*, ECF 29 at 5 ("If the Court were to deny the motions to withdraw the reference, 'it would result in an unnecessary layer of judicial review, which would in turn waste time and judicial resources.'" (quoting *Cachet Fin. Servs.*, 652 B.R. at 347)). But at the very least, the nature of the Coverage Action claims (and the Bankruptcy Court's inability to adjudicate them) plainly establishes that "judicial efficiency" will be "'enhanced' and 'unnecessary costs'" and delay "'avoided by'" withdrawing the reference and centralizing all activity in "'a single proceeding'" before this Court. *Cachet Fin. Servs.*, 652 B.R. at 346 (quoting *Sec. Farms*, 124 F.3d at 1008-9)). *Accord, e.g.*, *Green v. FDIC (In re Tamalpais Bancorp)*, 451 B.R. 6, 11 (N.D. Cal. 2011) ("[J]udicial resources would be most efficiently used by withdrawing the reference, and … unnecessary delay and costs to the parties can be avoided by withdrawing the reference."); *Everett*, 556 B.R. at 443 ("If the … Bankruptcy Court can not [*sic*] enter final judgment, then efficiency generally favors withdrawing the reference."). Accordingly, the efficient use of judicial resources" and "delay and cost[]" factors, *Sec. Farms*, 124 F.3d at 1008, weigh in favor of withdrawing the reference.

## B.     Westport Has Demanded a Jury Trial

The reference should be withdrawn for the additional reason that Westport has demanded a jury trial, which the Bankruptcy Court cannot oversee, for all claims in the Coverage Action. *Cf. EPD Investment Co.*, 594 B.R. at 425-26 (valid jury trial right and absence of consent constitutes cause to withdraw the reference). Jury trials in bankruptcy courts generally implicate two, distinct issues. The first arises under Section 157(e). That section in pertinent part provides that a bankruptcy judge "may conduct [a] jury trial" only "with the express consent of all the parties" (and only then "if specially designated to exercise such jurisdiction by the district court"). 28 U.S.C. § 157(e). Stated simply, bankruptcy courts lack the statutory authority to hold jury trials

absent universal assent.[33]

The second, and more structural issue, is an irreconcilable conflict between Section 157(c)(1) and the Seventh Amendment. As set forth in greater detail below, the Seventh Amendment guarantees a jury trial right for certain claims – and, to safeguard the effectiveness of that right, provides that "no fact tried by a jury[] shall be … re-examined in any Court of the United States, [other] than according to the rules of common law." U.S. Const. amend. VII. This re-examination prohibition among other things applies to "another court's review of facts found by the jury with no standard of deference and with the authority to redecide those matters in the first instance," which is precisely what Section 157(c)(1) requires whenever a non-core matter is reviewed *de novo* by a district court. *Cinematronics*, 916 F.2d at 1451. A district court faced with a bankruptcy court jury verdict on non-core matters, in other words, cannot fulfil its "express statutory mandate" (*viz.*, to review *de novo* the bankruptcy court jury verdict) without violating the Seventh Amendment re-examination prohibition and cannot remain faithful to the Seventh Amendment without acting contrary to Section 157(c)(1). *Id.* "Faced with this problem, several courts" – including the Ninth Circuit – "have concluded that where a jury trial is required and the parties refuse to consent to bankruptcy court jurisdiction, withdrawal of the case to the district court is appropriate." *Id.* (stating, "we agree with these courts" and finding that the district court's "refusal to withdraw the referral to the bankruptcy court [wa]s an abuse of discretion" where the case involved non-core claims and a jury trial right).

The Seventh Amendment, in turn, governs the existence of the jury trial right (and thus whether "a jury trial is required," *id.*). Pursuant to the Seventh Amendment, a jury trial right attaches to all "[s]uits at common law, where the value in controversy shall exceed twenty dollars." U.S. Const. amend. VII. This guarantees litigants access to a jury trial for "suits in which *legal* rights [a]re to be ascertained and determined, in contradistinction to those where equitable rights alone [a]re recognized, and equitable remedies . . . administered." *Granfinanciera v. Nordberg*, 492 U.S. 33, 42 (1989) (quoting *Parsons v. Bedford*, 28 U.S. 433, 441 (1830) (emphasis in original)).

---

[33] For the avoidance of doubt, Westport does not consent to a jury trial in the Bankruptcy Court.

To determine whether a "suit[]" involves sufficiently "legal rights," *id.* (internal citations and quotations omitted) (emphasis omitted), courts first assess the nature of the action and the remedy requested. *E.g.*, *Germain v. Conn. Nat'l Bank*, 988 F.2d 1323, 1328 (2d Cir. 1993). But that evaluation is not determinative – particularly in the context of claims for declaratory judgment. *Cf. Northgate Homes, Inc. v. City of Dayton*, 126 F.3d 1095, 1099 (8th Cir. 1997) (noting that "declaratory relief *per se* is neither legal nor equitable."). Stated differently, "[an] action [that] is in ***form*** a declaratory judgment case should not obscure" the otherwise "essentially legal ***nature***" of the claim. *Simler v. Conner*, 372 U.S. 221, 223 (1963) (emphasis added); *see also Cumis Specialty Ins. Co. v. Kaufman*, No. 21cv11107 (DLC), 2022 WL 4534459, at *4 (S.D.N.Y. Sept. 28, 2022) (whether a declaratory judgment action is legal or equitable in nature typically "depends upon the traditional action that would have been brought" absent recourse to such relief).

Thus, where declaratory judgment claims are in effect a "contract dispute," *Roman Cath. Diocese of Rockville Ctr., New York v. Arrowood Indem. Co.*, No. 20-CV-11011 (VEC), 2021 WL 1978560, at *4 (S.D.N.Y. May 17, 2021), courts have repeatedly concluded that they are sufficiently "legal [in] nature," *Simler*, 372 U.S. at 223, for a jury trial right to attach. *E.g.*, *Burdette v. Emerald Partners LLC*, No. C15-0816-JCC, 2015 WL 4394859, at *3 (W.D. Wash. July 16, 2015) ("Defendants are also entitled to a jury trial on Plaintiff's claim for declaratory judgment because the issues are legal in nature."). This includes claims for declaratory judgment relating to insurance coverage. *E.g.*, *Underwriters*, 634 B.R. at 237 ("[T]he claims here (breach of contract and declaratory judgment)," both in the context of an insurance coverage dispute, "are legal in nature and thus [the insurer defendants] are entitled to a jury trial."); *Stonewall Ins. Co. v. Nat'l Gypsum Co.*, No. 86 CIV. 9671 (JSM), 1992 WL 281401, at *1 (S.D.N.Y. Sept. 25, 1992) ("[D]eclaratory judgment that defendant insurers are obligated to pay certain sums and indemnify [the insured] for sums within the policy limits" is "essentially legal in nature and thus a jury trial may be demanded.").

That analysis applies with equal force here. Though Westport seeks declaratory judgment in the Coverage Action, all of Westport's claims are based on the terms of contract(s) – the Policy and Release – and to a large degree invert claims that an insured might bring as actions for breach:

for example, an insurer (such as Westport) might seek declaratory judgment on the duty to indemnify certain claims; an insured that presented those claims for payment or coverage to its insurer might very well bring a breach action based on the insurer's refusal to indemnify. The second obviously is legal, and a jury right would attach if demanded, but the first is no less so simply because it is in the form of a claim for declaratory judgment. *See Stonewall Ins. Co.*, 1992 WL 281401, at *1. Westport therefore is entitled to a jury trial on the Coverage Action claims (all of which are non-core) and, having not consented to a jury trial in the Bankruptcy Court, "has shown cause for withdrawal of the reference," *EPD Investment*, 594 B.R. at 425-26. *Accord Cinematronics*, 916 F.2d at 1451; *In re Appleseed's Intermediate Holdings, LLC*, 2011 WL 6293251, at *2 (D. Del. Dec. 15, 2011) (granting motion to withdraw the reference following consideration of "whether defendants are entitled to a jury trial and, if so, whether the trial is likely").

As a practical matter, moreover, the predominance of jury issues in the Coverage Action – and the especially high likelihood that they will in fact reach a jury – further emphasizes that withdrawal of the reference is necessary to preserve judicial resources. Unlike some insurance coverage disputes, the Coverage Action here will not be cabined to a mere interpretation of the Policy; much of it will require determination of disputed factual issues about such things as what the Debtor knew, when it knew it, and what it did (if anything) in response.[34] As set forth above, the abuse claimants contend that the Debtor was aware of the abuse, ratified it, and covered it up.[35] Per the clear terms of the Policy, Westport is not liable for loss caused by acts of the insured that were not accidental or for injury that was expected or intended.[36] Thus, it will be up to a jury to determine whether certain of the underlying injuries alleged were, among other things, caused by willful acts of the Debtor, *i.e.*, were not accidental, or were either expected or intended by the Debtor. *Cf. Chu v. Canadian Indem. Co.*, 224 Cal. App. 3d 86, 103 (1990) ("The issues in this case … are essentially factual in nature: 'What did [they] know, and when did [they] know it?'");

---

[34] *E.g.*, Complaint, First Cause of Action.

[35] *See id.*, ¶¶ 29-35.

[36] *Id.*, § A.

1   *Masonite Corp. v. Great Am. Surplus Lines Ins. Co.*, 224 Cal. App. 3d 912, 921 (1990) (noting that

2   the jury determined whether the plaintiff "expected [or] intended" to discharge a pollutant).

3           Further, the predominance of jury trial issues here makes it particularly unlikely that the

4   Bankruptcy Court will be able to offer even recommended decisions on certain key matters.  This

5   means that, absent withdrawal of the reference, little if any progress will be made towards resolving

6   the ultimate issues in the Coverage Action because this Court will be forced to undertake a *de novo*

7   review of the rulings of the Bankruptcy Court on the limited issues that do not involve disputed

8   facts – effectively duplicating that work on these issues.  *See, e.g., Gumport v. Growth Fin. Corp.*

9   *(In re Transcon Lines)*, 121 B.R. 837, 838 (C.D. Cal. 1990) ("Due to the fact that a District Court

10  Judge must eventually preside over the jury trial in this matter, it would constitute a tremendous

11  waste of judicial resources to permit the bankruptcy judge to continue to maintain jurisdiction over

12  the issues presented in this litigation.").  Under these circumstances, Westport's jury trial demand

13  provides ample cause to withdraw the reference.

14          **C.      All Other Factors Support Withdrawal of the Reference**

15          Finally, withdrawing the reference will not interfere with the uniform administration of the

16  Bankruptcy Case or encourage forum shopping.  As set forth above, Westport's Coverage Action

17  claims are exclusively non-core, state law claims that exist completely independently from the

18  Bankruptcy Code generally and this Bankruptcy Case specifically – and therefore pose no threat to

19  the uniform administration of the bankruptcy case.  *Cf., e.g., Rosales v. Rosales (In re Rosales)*,

20  No. 13-CV-01316-LHK, 2013 U.S. Dist. LEXIS 160625, at *24 (N.D. Cal. Nov. 4, 2013)

21  (determining that "[u]niform administration … [wa]s the sole factor that [dis]favor[ed]

22  withdrawing the reference" because the claim was "a core cause of action, the determination of a

23  secured claim," that was "more properly within" the bankruptcy court's "competence" and "over

24  which the [b]ankruptcy [c]ourt [could] enter final judgment").  Forum shopping likewise is not a

25  concern because there is no alternative forum: only this Court has the constitutional authority to

26  conduct a jury trial and enter final judgment on the claims at issue in the Coverage Action.  *Id.*

27  ("The prevention of forum shopping is not a concern here as only this Court has the power to enter

28  final judgment on the claims [that] the [b]ankruptcy [c]ourt cannot" adjudicate).  *Accord, e.g.,*

*Tamalpais Bancorp*, 451 B.R. 6, 12 (N.D. Cal. 2011) (similar); Order re: Motions to Withdraw Reference, *Roman Catholic Bishop of Oakland*, ECF 29 at 5 (similar). As a result, all remaining factors "likewise favor withdrawal of the reference here." Order re: Motions to Withdraw Reference, *Roman Catholic Bishop of Oakland*, ECF 29 at 5.

## III.    LOCAL RULE 9015-2(B) DOES NOT SUPPORT WAITING TO WITHDRAW THE REFERENCE

Although the Debtor may argue that, pursuant to B.L.R. 9015-2(b), the Bankruptcy Court can oversee pre-trial matters and then this Court can hold the jury trial, that argument is unpersuasive. Local Rule 9015-b(2) provides that "the bankruptcy court is **permitted** to retain jurisdiction over the action for pre-trial matters," *In re Healthcentral.com*, 504 F.3d 775, 787 (9th Cir. 2007) (emphasis added), which implements a flexible rule that makes sense in some cases: where, *e.g.*, pre-trial proceedings "may obviate the need for a jury trial altogether" or the "bankruptcy court's knowledge of bankruptcy law and familiarity with the underlying facts of the action weigh in favor of keeping pre-trial matters with the bankruptcy judge," the local rule facilitates that outcome. *Hjelmeset*, 2018 WL 558917, at *5 (N.D. Cal. Jan. 25, 2018).

But this is not one of those cases. Here, Westport has made a jury demand at the outset of the Coverage Case, the action centers on legal claims regarding non-core matters, and any delay in withdrawal will waste scarce judicial resources. Rule 9015-2(b) was not intended for and is unpractical in this situation. Indeed, the general function of the rule – "[d]enying withdrawal in the pre-trial stages of a non-core proceeding only to accept it on a later date for the purpose of hearing the jury trial or reviewing the bankruptcy court's findings" – virtually guarantees the "unnecessar[y] consum[ption of] judicial resources," *Gens v. Colonial Sav., F.A.*, No. 11-CV-05526 RMW, 2012 WL 993713, at *2 (N.D. Cal. Mar. 23, 2012), in this Coverage Case.

Pre-trial discovery can be efficiently coordinated by this Court or a magistrate judge, if deemed appropriate, as has occurred in other bankruptcy cases. *See, e.g., Sharp v. Hawkins*, No. C 03-5023 CW, 2004 WL 2792121, at *7 (N.D. Cal. June 8, 2004) ("the reference should be withdrawn so that related discovery can be coordinated before [the district court judge] or a magistrate judge"). But at bottom, when "non-core claims completely overwhelm claims that can

be finally adjudicated in Bankruptcy Court, and the matter is more likely to eventually come before this Court," as is certainly true here, "efficiency is best served by having the matter heard in the correct forum *at the earliest possible opportunity*." *Cachet Financial Servs.,* 2023 WL 4752048, at *6 (quoting *Everett*, 556 B.R. at 445 (emphasis in original)). Withdrawal of the reference therefore should occur ***now***, at the outset of this Coverage Action.

## CONCLUSION

WHEREFORE, Westport respectfully requests entry of an order (a) withdrawing the reference of this Coverage Action to the Bankruptcy Court and (b) granting such other and further relief as is just and proper.

[*Signatures follow*]

- 18 -

| | |
|---|---|
| 1 | Dated: October 8, 2025 |

Dated: October 8, 2025

By: */s/ Harris B. Winsberg*

**PARKER HUDSON RAINER & DOBBS LLP**
Harris B. Winsberg (admitted *pro hac vice*)
Matthew M. Weiss (admitted *pro hac vice*)
Matthew G. Roberts (admitted *pro hac vice*)
303 Peachtree Street NE, Suite 3600
Atlanta, GA 30308
(404) 523-5300 (telephone)
hwinsberg@phrd.com
mweiss@phrd.com
mroberts@phrd.com

Todd Jacobs (admitted *pro hac vice*)
John E. Bucheit (admitted *pro hac vice*)
Two N. Riverside Plaza
Suite 1850
Chicago, IL 60606
(312) 477-3306 (telephone)
tjacobs@phrd.com
jbucheit@phrd.com

**SINNOTT, PUEBLA, CAMPAGNE & CURET, APLC**
Blaise S. Curet
2000 Powell Street, Suite 830
Emeryville, CA 94608
(415) 352-6200 (telephone)
bcuret@spcclaw.com

**LAW OFFICE OF ROBIN CRAIG**
Robin D. Craig
6114 La Salle No. 517
Oakland, CA 94611
(510) 549-3310 (telephone)
rdc@rcraiglaw.com

*Attorneys for Westport Insurance Corporation, formerly known as Employers Reinsurance Corporation*