UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WESTPORT INSURANCE CORPORATION,<br><br>    Plaintiffs,<br><br>    v.<br><br>THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF THE ROMAN CATHOLIC ARCHBISHOP OF SAN FRANCISCO,<br><br>    Defendant. | Case No. 25-cv-09314-WHO<br><br>**ORDER WITHDRAWING REFERENCE**<br><br>Re: Dkt. Nos. 6, 26 |

Westport Insurance Corporation ("Westport") brought a declaratory relief action in the United States Bankruptcy Court for the Northern District of California (the "Bankruptcy Court") against debtor the Roman Catholic Archbishop of San Francisco ("RCASF"), seeking to clarify whether Westport has any obligation under its insurance policy to defend or indemnify the RCASF in its ongoing sexual abuse court actions. Westport now seeks to withdraw the insurance coverage dispute from the Bankruptcy Court to this court under 28 U.S.C. § 157(d). For the reasons described below, Westport's motion to withdraw reference is GRANTED.

**BACKGROUND**

Westport entered a prepetition liability contract with the RCASF to provide "excess liability coverage" for a period running from July 8, 1972 to July 8, 1975 (Excess Policy No. U10447) (the "Policy"). *See* Notice of Motion ("Mot.") [Dkt. No. 6] at 3. The policy provided coverage for "loss in excess of the limits of underlying insurance and resulting from an 'occurrence.'" *Id.* An "occurrence" was defined by the policy as including "an accident, including injurious exposure to conditions, which results, during the policy period, in personal

1  injury or property damage neither expected nor intended from the standpoint of the Insured." *Id.*

2  The RCASF has faced increased scrutiny in recent years by survivors of child sexual

3  abuse. *Id.* When the California Legislature removed the statute of limitations to bring forth claims

4  alleging childhood sexual abuse, approximately 537 lawsuits were filed against the RCASF

5  alleging sexual abuse by clergy or others associated with it. *Id.* at 3–4 (referencing Cal. Civ. Proc.

6  Code § 340.1(q)). Given the sudden increased volume of litigation, the RCASF filed for Chapter

7  11 Bankruptcy in the Bankruptcy Court on August 21, 2023. Mot. at 4–5.

8  Westport alleges that the RCASF has tendered to them "over 100 Underlying Claims for

9  which the [RCASF] seeks coverage under the Policy." Mot. at 5. As a result, on October 8, 2025,

10  Westport filed a complaint in the Bankruptcy Court, seeking declaratory judgment that the Policy

11  does not provide coverage to the RCASF in various circumstances, as well as a jury trial on all

12  disputed issues. *Id.* at 5–6. Westport "contemporaneous[ly]" filed a motion to withdraw the

13  reference to the Bankruptcy Court in order to have the matter heard in this one. *See id.* On

14  November 17, 2025, the RCASF filed a statement of non-opposition to Westport's motion. *See*

15  Statement of Non-Opposition ("Non-Oppo.") [Dkt. No. 26] at 1.

## DISCUSSION

17  Under 28 U.S.C. § 1334(b), district courts retain "original but not exclusive jurisdiction"

18  over all bankruptcy proceedings. These proceedings include "core proceedings, in which the

19  bankruptcy court may enter appropriate orders and judgments," and "non-core proceedings, which

20  the bankruptcy court may hear but for which it may only submit proposed findings of fact and

21  conclusions of law to the district court for *de novo* review." *Sec. Farms v. Int'l Brotherhood of*

22  *Teamsters, Chauffers, Warehousemen & Helpers*, 124 F.3d 999, 1008 (9th Cir. 1997) (quoting 28

23  U.S.C. § 157) (internal quotation marks omitted). "Actions that do not depend on bankruptcy laws

24  for their existence and that could proceed in another court are considered 'non-core.'" *Id.*

25  District courts have the authority to withdraw reference to the bankruptcy court under 28

26  U.S.C. § 157(d). That section allows for both permissive and mandatory withdrawal. *Id.*

27  Mandatory withdrawal is required if "resolution of the proceeding requires consideration of both

28  title 11 and other laws of the United States regulating organizations or activities affecting

interstate commerce." *Id.* Permissive withdrawal, however, requires a showing that the party moved in a "timely" manner and shows "cause" in support of its request. *Id.* "In determining whether cause exists, a district court should consider the efficient use of judicial resources, delay and costs to the parties, uniformity of bankruptcy administration, the prevention of forum shopping, and other related factors." *Sec. Farms*, 124 F.3d at 1008.

Westport contends that permissive withdrawal is appropriate in this case because (1) much of the dispute involves jury issues that cannot be resolved by a bankruptcy court; (2) the claims at issue involve "exclusively state-law matters . . . that by definition do not arise under the Bankruptcy Code or in the Bankruptcy Case"; and (3) withdrawal will "promote the efficiency, economy, and other policy considerations that animate the referral power." Mot. at 1–2. Westport also claims that the reference "must be withdrawn eventually" and doing so "now will prevent ongoing harm to the administration" of the underlying bankruptcy proceeding. *Id.* at 2. The RCASF does not oppose withdrawal of the reference because the insurance coverage dispute involves "non-bankruptcy law" and potentially triable issues before a jury but does not "concede or admit . . . the underlying claims or allegations" asserted in the insurance coverage dispute. Non-Oppo. at 1. I agree that there is good cause to withdraw the reference here.

### A. The Motion is Timely.

A withdrawal request is timely if brought "as promptly as possible in light of the developments in the bankruptcy proceeding." *Sec. Farms*, 124 F.3d at 1007 n.3 (quoting *In re Baldwin-United Corp.*, 57 B.R. 751, 754 (S.D. Ohio 1985)). Courts have found that motion for withdrawal is timely if filed within days of the underlying complaint in bankruptcy court. *See, e.g.*, *Roman Cath. Diocese of Rockville Ctr. v. Certain Underwriters at Lloyds, London & Certain London Mkt. Cos.*, 634 B.R. 226, 233 (S.D.N.Y. 2021) (eight days after answer); *Sec. Farms*, 124 F.3d at 1107 n.3 (six days after removal from state court).

Westport's motion is timely under Section 157(d). Westport moved for withdrawal of the reference "mere minutes after filing the Complaint that initiated the proceeding." Mot. at 7. This certainly qualifies as a "timely" motion to withdraw reference.

### B. There is Cause to Withdraw.

#### 1. **Judicial Efficiency**

The next step in the analysis is deciding whether Westport's claims are core or non-core, as "it is upon this issue that questions of efficiency and uniformity will turn." *Hjelmeset v. Cheng Hung*, No. 17-CV-05697-BLF, 2018 WL 558917, at *3 (N.D. Cal. Jan. 25, 2018). Bankruptcy judges are "limit[ed] [by the Constitution] to adjudicate—i.e., to render a final judgment—to issues that are at the 'core' of the bankruptcy power." *In re Harris*, 590 F.3d 730, 737 (9th Cir. 2009). If a proceeding is "core," then "[b]ankruptcy judges may hear and determine" it on a final basis, subject to appellate review. 28 U.S.C. § 157(b)(1). If a proceeding is "non-core," however, then a bankruptcy court must prepare "proposed findings of fact and conclusions of law" for submission to "the district court," who must then enter "final . . . judgment" on the claim "after considering the bankruptcy judge's proposed findings and conclusions and . . . reviewing de novo" all "matters to which any party has [properly] objected." 28 U.S.C. § 157(c)(1).

To determine "whether a matter is a non-core proceeding," courts typically "look to a variety of factors 'such as whether the rights involved exist independent of title 11, depend on state law for their resolution, existed prior to the filing of a bankruptcy petition, or were significantly affected by the filing of the bankruptcy case.'" *In re Yochum*, 89 F.3d 661, 670 (9th Cir. 1996) (quoting *In re Cinematronics, Inc.*, 916 F.2d 1444, 1450 n.5 (9th Cir. 1990)). "[I]n cases where non-core issues predominate, judicial efficiency may be 'enhanced,'" as "'unnecessary costs could be avoided by a single proceeding in the district court.'" *In re Cachet Fin. Servs.*, 652 B.R. 341, 346 (C.D. Cal. 2023) (quoting *Sec. Farms*, 124 F.3d at 1008–09).

Westport maintains that the claims in the insurance coverage dispute "clearly are non-core under this analysis." Mot. at 9. I agree. Its complaint raises only non-core state law claims. The crux of the insurance coverage dispute involves "disagreements over the terms of prepetition contracts" that "depend on state law for their resolution" and "exist independent of title 11." Mot. at 10; *In re Yochum*, 89 F.3d at 670 (internal citations and quotations omitted); *see also In re The Roman Catholic Bishop of Oakland*, Nos. 3:24-cv-00709-JSC, 3:24-cv-00711-JSC, 2024 WL 1160907, at *2 (N.D. Cal. Mar. 18, 2024) (finding similar contractual disputes to be "non-core" to

4

the bankruptcy court); *Cinematronics*, 916 F.2d at 1450 ("[S]tate law contract claims . . . [should] not be deemed core"). Because contract disputes involve quintessentially "private rights," bankruptcy courts lack authority under Article III to issue a final judgment on these contractual claims. *Exec. Bens. Ins. Agency v. Arkison*, 573 U.S. 25, 32 (2014). Under these circumstances, the bankruptcy court lacks both the statutory and constitutional authority to resolve the insurance coverage dispute "on a final basis." Mot. at 11. Withdrawal is inevitable, and judicial efficiency is "best served by having the matter heard in the correct forum at the earliest possible opportunity." *Everett v. Art Brand Studios, LLC*, 556 B.R. 437, 445 (N.D. Cal. 2016).

Additionally, Westport has demanded a jury trial on all claims in the insurance coverage dispute. Mot. at 12. Because Westport does not consent to bankruptcy jurisdiction, the Bankruptcy Court cannot conduct a jury trial on the noncore claims. *See* Mot. at 15; *Cinematronics*, 916 F.2d at 1451. Each of these reasons suggest that withdrawal is the most judicially efficient outcome.

### 2. **Other Factors**

The other factors—"delay and costs to the parties, uniformity of bankruptcy administration, the prevention of forum shopping, and other related factors"—likewise favor withdrawal of the reference here. *Sec Farms*, 124 F.3d at 1008. Withdrawal will help mitigate any concerns about delay and costs to the parties, as it will "plac[e] the non-core cases in this Court, which can render final judgment." *In re Rosales*, No. 13-CV-01316-LHK, 2013 WL 5962007, at *7 (N.D. Cal. Nov. 7, 2013). Similarly, forum shopping and the uniformity of bankruptcy administration are not concerns here because "only this Court has the power to enter final judgment on the claims [that] the Bankruptcy Court cannot" adjudicate. *Id.*

## CONCLUSION

Each permissive withdrawal factor weighs in favor of removing the insurance coverage dispute from the Bankruptcy Court and neither party opposes withdrawal. Westport's motion is GRANTED.

An initial case management conference for the parties is set for February 3, 2026 at 2:00 p.m. via Zoom videoconference. A joint case management conference statement shall be filed by

5

January 27, 2026.

**IT IS SO ORDERED.**

Dated: December 10, 2025



William H. Orrick
United States District Judge