UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WESTPORT INSURANCE CORPORATION,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>THE ROMAN CATHOLIC ARCHBISHOP OF SAN FRANCISCO,<br><br>　　　　　Defendant. | Case No.  25-cv-09314-RFL<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO STAY**<br><br>Re: Dkt. No. 47 |

Fifty years ago, a predecessor to the Westport Insurance Company sold the Roman Catholic Archbishop of San Francisco ("RCASF") an excess insurance policy covering losses from acts occurring between 1972 and 1975.  In 2019, California enacted AB 218, reviving time-barred claims for survivors of childhood sexual assault.  RCASF has since declared bankruptcy, facing over 500 lawsuits under AB 218.  More than 100 of those may implicate Westport's policy.  So Westport brought this case, seeking declarations that its policy does not cover those lawsuits.  RCASF moves to stay, arguing that litigating this case at the same time as the survivors' lawsuits would be prejudicial.  For the reasons stated below, RCASF's motion is **GRANTED IN PART** and **DENIED IN PART**.[1]

---

[1] RCASF alternatively moves to dismiss for lack of a live controversy.  Although presented in the alternative, courts have an independent obligation to consider subject matter jurisdiction.  A claim involving an excess insurer generally presents a live controversy when there is a "substantial likelihood that the dispute will reach the excess policies." *Century Indem. Co. v. Marine Grp., LLC*, 848 F. Supp. 2d 1229, 1235 (D. Or. 2012).  Given the $1 million threshold to trigger the excess liability insurance at issue, the sizable awards common in childhood sexual abuse cases, and the pendency more than 100 actions potentially implicating the policy, there is a substantial likelihood of reaching Westport's policy.  There is subject matter jurisdiction here.

1

## I.  BACKGROUND

The following summarizes Westport's allegations, as relevant to this motion.  Employers Reinsurance Company, a predecessor to Westport, sold RCASF an excess insurance policy covering the period July 8, 1972, to July 8, 1975.  (Dkt. No. 1-5 ("Compl.") ¶¶ 15, 19.)  After California enacted AB 218 in 2019, 541 survivors filed lawsuits against RCASF alleging childhood sexual assault.  (*Id.* ¶¶ 4–5.)  The survivors allege that RCASF "permitted, denied and concealed the sexual abuse."  (*Id.* ¶ 5.)  RCASF has tendered over 100 of those lawsuits to Westport for coverage.  (*Id.* ¶ 7.)

Westport asserts six claims against RCASF, each seeking a different declaration about its policy.  First, Westport seeks a declaration that it has no duty to defend or indemnify RCASF for any underlying actions asserting abuse by Father Joseph Pritchard.  (*Id.* ¶¶ 42–53.)  Westport says those actions are excluded under the policy because RCASF "expected or intended" Pritchard's abuse.  (*Id.* ¶ 50.)  Second, Westport seeks a declaration that it has no duty to defend or indemnify RCASF for actions that were the subject of a 2005 settlement between RCASF and its insurers (including Westport).  (*Id.* ¶¶ 54–61.)  Third, Westport seeks a declaration that it has no duty to defend or indemnify RCASF for any of the underlying actions since RCASF "expected or intended" the survivors' abuse.  (*Id.* ¶¶ 62–71.)  Fourth, Westport seeks a declaration that it has no duty to defend or indemnify RCASF for any injuries that occurred outside of its policy's stated period.  (*Id.* ¶¶ 72–76.)  Fifth, Westport seeks a declaration that its excess coverage has not attached because the primary coverage limit has not been exhausted for any underlying action.  (*Id.* ¶¶ 77–83.)  Finally, Westport seeks a declaration that RCASF breached various terms and conditions of its policy.  (*Id.* ¶¶ 84–89.)

## II.  LEGAL STANDARD

Stays are procedural, so federal law governs.  *See U.S. Specialty Ins. Co. v. Bell Painting*, No. 3:22-CV-03787-WHO, 2023 WL 5725582, at *2 (N.D. Cal. Aug. 9, 2023) (collecting cases and citing, among others, *Zurich Am. Ins. Co. v. Omnicell, Inc.*, No. 18-CV-05345-LHK, 2019 WL 570760, at *2–5 (N.D. Cal. Feb. 12, 2019)).  Federal courts have inherent authority to stay

cases under *Landis v. N. Am. Co.*, 299 U.S. 248 (1936), and can also stay declaratory relief cases under *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491 (1942).  Both are relevant since Westport seeks only declaratory relief.  *See Zurich*, 2019 WL 570760 at \*4.  But *Landis*' authority is broader, so starting there makes sense.[2]  The *Landis* factors focus on: (1) "possible damage which may result from the granting of a stay"; (2) "the hardship or inequity which a party may suffer in being required to go forward"; and (3) "the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay."  *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1110 (9th Cir. 2005) (quoting *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962)).

## III.   DISCUSSION

### A.   Damage to Westport

The record does not show that Westport would face potential material damage sufficient to warrant denial of a stay.  Courts generally find that an insurer's advancement of defense costs is "part of an insurer's obligation and costs of doing business."  *See, e.g.*, *Zurich*, 2019 WL 570760, at \*5 (quoting *State Nat'l Ins. Co., Inc. v. US-SINO Inv., Inc.*, No. 5:13-CV-05240-EJD, 2015 WL 5590842, at \*5 (N.D. Cal. Sept. 23, 2015)).  Westport distinguishes this case as involving an excess insurer and a bankrupt insured.  But that is not a persuasive basis to apply a different rule.  An excess insurer still has a duty to defend, even if that duty is contingent on exhausting the primary policy's limits.  And an insurer always faces the risk that an insured will become bankrupt, possibly preventing a complete recovery of any erroneously paid benefits.  Finally, that Westport might enter settlements without completely understanding the risk it faces is an ever-present concern in litigation and does not place this case in a different category.  *Cf. Lockyer*, 398 F.3d at 1112 ("[B]eing required to defend a suit, without more, does not constitute a 'clear case of hardship or inequity' . . . .").

---

[2] As Westport seeks only declaratory relief, *Landis* provides authority to issue a stay.  *See Travelers Indem. Co. of Conn. v. BNSF Ry. Co.*, No. 24-CV-06319-HSG, 2025 WL 1927687, at \*6 (N.D. Cal. July 14, 2025).  In any event, a stay would be granted even if applying *Brillhart*, for the same reasons.

B.        **Hardship to RCASF**

Conversely, RCASF has shown it would suffer hardship unless most of Westport's claims are stayed.  Both California and federal courts acknowledge that simultaneous litigation of third-party actions and insurance coverage of those underlying actions is prejudicial because it allows the insurer to "join forces with the plaintiffs in the underlying actions as a means to defeat coverage," forces the insured to "fight a two-front war," and risks the unequal application of collateral estoppel. *Montrose Chem. Corp. v. Superior Ct.*, 25 Cal. App. 4th 902, 910 (1994); *U.S. Specialty*, 2023 WL 5725582, at *4.  Westport agrees that its third, fourth, and sixth claims could cause this prejudice, but says its remaining claims would not.  (Dkt. No. 47-6 at 23–24.)[3]

Litigating Westport's first claim would also prejudice RCASF, though.  Westport will have to show RCASF "knew or believed its conduct was substantially certain or highly likely to result in" Father Pritchard's abuse, not just that it "should have known." *See Shell Oil Co. v. Winterthur Swiss Ins. Co.*, 12 Cal. App. 4th 715, 748 (1993).  Though Westport contends that this claim only requires considering a 2005 jury verdict finding RCASF liable for Father Pritchard's abuse of Dennis Kavanaugh, the jury only determined that RCASF "kn[e]w *or* ha[d] reason to know" of Pritchard's abuse.  (*See* Compl. ¶¶ 30, 51 (emphasis added).)  Thus, it seems almost certain that this claim will require Westport to present additional, highly prejudicial evidence.

By contrast, litigating Westport's second claim would not be prejudicial.  That claim centers on a settlement agreement between RCASF and several insurers (including Westport). (*Id.* ¶¶ 56–58.)  Determining if that settlement agreement released Westport from defending or indemnifying RCASF against certain claims would only require considering non-prejudicial issues of contract formation and enforceability, in addition to whether the claimants are related to those listed in the settlement and make claims "aris[ing] out of" acts of sexual abuse.  (*See id.*)

Westport's fifth claim concerns whether its excess coverage has been triggered.  (*Id.* ¶¶ 77–83.)  It is not clear if the parties are in dispute on that front.  (*See* Dkt. No. 47-9 at 13; Dkt.

---

[3] All citations to page numbers in filings on the docket refer to ECF pagination.

No. 61 at 3–4.)  Regardless, there is no real benefit to litigating that issue now before the amount of liability and scope of primary insurance coverage is determined.  Moreover, the dispute could raise similarly prejudicial evidence about coverage under RCASF's primary insurance policies.

### C.    Orderly Course of Justice

A partial stay would advance the orderly course of justice.  The state court findings in the underlying actions regarding RCASF's knowledge will bear on the first and third through sixth claims in this case, simplifying the issues to be adjudicated.  *See Ohio Cas. Ins. Co. v. Cal.-Pac. Ann. Conf. of United Methodist Church*, No. 2:23-CV-02850-SB, 2023 WL 9004987, at *6, *8 (C.D. Cal. Nov. 17, 2023).

At oral argument, RCASF argued that a complete stay would be more judicially efficient than a partial stay.  But it has not shown that Westport's second claim "will be easier to decide at some later date."  *See Sarkar v. Garland*, 39 F.4th 611, 619 (9th Cir. 2022) (citing *CMAX*, 300 F.2d at 268).  Accordingly, a stay of the second claim would not promote judicial efficiency.

## IV.    CONCLUSION

RCASF's motion to stay is **GRANTED IN PART** and **DENIED IN PART**.  Except as to the second claim, the case is stayed.  That includes a stay of discovery.  The prejudice suffered by RCASF would be caused just as much by discovery as by motions practice and trial.  *See Riddell, Inc. v. Superior Ct.*, 14 Cal. App. 5th 755, 766 (2017) ("[A] request for a stay of discovery in the declaratory relief action presents 'essentially . . . the same basic question' as a request for a stay of the action itself." (quoting *Haskel, Inc. v. Superior Ct.*, 33 Cal. App. 4th 963, 980 (1995)).  For example, Westport's deposition of individuals working for RCASF would raise similar problems and expenses as those raised by its examination of those individuals at trial.  The court's decision in *Bishop of Oakland* does not counsel otherwise, because it arose in a distinctly different factual context: the Bishop of Oakland moved to stay its own lawsuit seeking declaratory judgment, based on the pendency of bankruptcy plan confirmation proceedings and after discovery had already opened.  (*See In re The Roman Cath. Bishop of Oakland Ins. Adversary Proc. Litig.*, No. 24-cv-00709-JSC (N.D. Cal. Jan. 17, 2025), Dkt. Nos. 166, 167.)

With respect to the duration of the stay, the prejudice to RCASF appears likely to continue until completion of *all* underlying actions that implicate Westport's policy.  Even if one underlying action is done, the coverage dispute about that action would likely involve evidence concerning RCASF's knowledge and intent that would be prejudicial as to the remaining pending underlying actions.  Though Westport may seek to lift the stay earlier if appropriate, it seems unlikely that such a motion will succeed until the completion of all underlying actions.

The parties shall meet and confer, and by **June 2, 2026**, file (1) a proposed case schedule for Westport's second claim; and (2) a stipulation regarding filing of an amended complaint and the application of the stay to any new claims, or a proposed schedule for a motion for leave to file an amended complaint and associated motion to stay any new claims.  The parties shall also file a joint status report every six months regarding the status of the underlying actions.

**IT IS SO ORDERED.**

Dated: May 19, 2026

RITA F. LIN
United States District Judge